**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION**

**CIVIL NO.  2:07CV28**

| | |
|---|---|
| **B. DIANE YARD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **Vs.** ) | **MEMORANDUM AND** |
| _____ ) | **O R D E R** |
| **MICHAEL J. ASTRUE, Commissioner** ) | |
| **of Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the parties' cross motions for

summary judgment.  For the reasons stated herein, the Defendant's motion

is granted and the Plaintiff's motion is denied.

## I.  STANDARD OF REVIEW

This Court does not conduct a *de novo* review of the decision of the

Administrative Law Judge (ALJ).  ***Smith v. Schweiker*, 795 F.2d 343, 345**

**(4th Cir. 1986).**  In fact, under the statutory scheme of the Social Security

Act, the reviewing court "must uphold the factual findings of the Secretary if

they are supported by substantial evidence and were reached through

application of the correct legal standard." ***Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); 42 U.S.C. § 405(6) (2001).** Substantial evidence is defined as that which "'a reasonable mind might accept as adequate to support a conclusion.'" ***Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations omitted).** "'It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" ***Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)); *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).** If there is sufficient evidence to withstand a motion for a directed verdict had the case been before a jury, then the evidence is substantial and the ALJ's decision may not be overturned. ***Id.*** "It is not our place either to weigh the evidence or to substitute our judgment for that of the Secretary if that decision was supported by substantial evidence." ***Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).** Thus, the issue for resolution here "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." ***Craig, supra.***

Each party has moved for summary judgment, claiming they are entitled to judgment as a matter of law.  Summary judgment is appropriate if there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law.  **Fed. R. Civ. P. 56(c).**  A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party.  ***Shaw v. Stroud*, 13 F.3d 791, 798 (4ᵗʰ Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).**

Where the parties have cross-moved for summary judgment, the Court will consider each motion separately.  Thus, in considering the Plaintiff's motion, Plaintiff as the moving party has an initial burden to show a lack of evidence to support Defendant's case.  ***Shaw, supra* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).**  If this showing is made, the burden then shifts to the Defendant who must convince the Court that a triable issue does exist.  *Id.*  Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]."  *Id.*  A "mere scintilla of evidence" is not sufficient to defeat summary judgment.  *Id.*  After consideration of the Plaintiff's motion, the

same procedure is used in connection with Defendant's motion for summary judgment.

Thus, in considering the facts of the case for purposes of these cross-motions, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).**

## II. PROCEDURAL HISTORY

On March 31, 2003, and April 13, 2004, Plaintiff filed applications for disability insurance benefits and Supplemental Security Income, alleging she became disabled as of November 2, 1998. **Transcript of Proceedings ("Tr."), at 55-62; 601-13; 19.** Her claims were denied initially on July 14, 2003, and again upon reconsideration after hearing on December 20, 2006. ***Id.* at 37, 43-46; 151-69; 614-17; 538-92**. Plaintiff timely filed a request for a hearing before an ALJ. At the hearing, Plaintiff was present and represented by counsel. ***Id.* at 541.** On January 12, 2007, the ALJ issued a decision finding Plaintiff was not entitled to a period of disability or disability insurance benefits. ***Id.* at 15-30.** He found that she was disabled on or after September 7, 2004, but not before that date.

*Id.* Plaintiff's request for review was denied by the Appeals Council. *Id*. at 7-11. The ALJ's decision thus became final and subject to this Court's review pursuant to 42 U.S.C. § 405(g). *See also*, 20 C.F.R. §§ 404.981, 416.1481 (2006). Plaintiff's action was timely filed and the case is now ripe for review.

### III. FINDINGS OF FACT

In her application for benefits, the Plaintiff alleges that she became disabled on November 1, 1998, due to bipolar disorder, personality disorder, panic attacks, obsessive compulsive disorder, major depression, and anxiety. **Tr. at 55.**

In 1997, Plaintiff relocated from Orlando, Florida, to Murphy, North Carolina. Plaintiff was 45-years-old as of November 2, 1998, and had completed high school and later earned an associate degree in May 2002. **Tr., 55, 543-44.** Plaintiff's prior work history includes 20 years as a customer service representative for Frito Lay®, most recently from 1989 through 1997. *.Id*. at 553-57. Plaintiff testified that she moved to Murphy for the seclusion and after settling into her new surroundings she rarely left her home. *Id*. at 548, 558. After leaving Frito Lay® her regular work

pattern ended.  *Id*. **at 48, 547.**  At the hearing, she initially denied having performed any work since November 1998, but then admitted having some earnings as a psychic reader from February 2002 to April 2004.  *Id*. **at 548-53.**  This income was reported by Plaintiff as: April 2004, $867.00; May 2004, $1,023; June 2004, $794.80; July 2004, $527.40; August 2004, $882.00; and September 2004, $941.60**.** *Id*. **at 600.**  As a result of these earnings, Plaintiff was found by Defendant to be self-employed in 2004 as a "sole proprietor" who determined "how many hours you wish to work, and make all the management decisions in your business," said earnings being "substantial in nature."  *Id.*; *see also*, **20 C.F.R. §§ 404.1574a(a)(b); 416.974a(a)(b) (2006).**  The average monthly earnings for this six-month period is $839.00 which is above the presumptive substantial gainful activity level of $810 for the year 2004.  **Tr. at 597.**[1]

In January 1999, Plaintiff saw Dr. Ken Cassell and was diagnosed with stress and depression and was prescribed Zoloft.  **Tr. at 269.**  In November 1999, she continued to receive Zoloft and other medications for depression and reported feeling much better and that she was able to

_____

[1]The Court agrees with Defendant that conducting psychic readings online for pay constitutes self- employment.  *See* **20 C.F.R. §§ 404.1575(b)(1); 416.975(b)(1) (2006).**

sleep well and had more energy. *Id*. **at 268.** In March 2000, she saw Dr.

Cassell and reported that she was depressed after recently learning that

her husband had allegedly sexually molested their children some years

earlier. Plaintiff expressed that she had trouble getting to sleep; Dr.

Cassell continued her on her prescribed medications. *Id*. **at 265.** In

February 2001, Dr. Cassell noted that Plaintiff continued to report signs of

depression, especially related to the recent revelation about her husband.

*Id*. **at 263-64.** On March 21, 2001, Plaintiff was feeling better, had more

energy and was sleeping better, and was continued on Prozac. *Id*. **at 262.**

On November 21, 2001, Dr. Cassell met with Plaintiff and she reported that

while she still felt depressed, the medications she was taking eased her

symptoms. *Id*. **at 183.**

On January 7, 2002, Dr. Cassell had transferred Plaintiff to Dr. Paul

Keeley for management of the prescribed psychotropic medications. *Id*. **at**

**419.** On January 28, 2002, Plaintiff admitted that she had sometimes

taken more Klonopin than the amount prescribed by Dr. Keeley. Plaintiff

reported that she was happy that she now had a job where she was

working out of her home by phone. *Id*. **at 453.** On February 11, 2003,

Plaintiff was seen by Amanda Burts, M.S.W., at Smoky Mountain Center.

Ms. Burts reported that Plaintiff's mood appeared less depressed and Plaintiff expressed that she was enjoying working from home. Ms. Burts noted that Plaintiff was not suicidal or homicidal. *Id*. **at 451.**

On April 29, 2002, Plaintiff presented to Smoky Mountain Center and indicated her mood had improved and agreed with a proposed medication change. *Id*. **at 443.** In June 2002, Plaintiff was examined by Kamantha Holloway-Neal, R.N., and Plaintiff reported she was more depressed because she was having marital difficulties and because her father had failed to attend her recent graduation ceremony where she was awarded associate degree. *Id*. **at 439, 436.** In August 2002, Plaintiff met with Ms. Burts and reported that she was not feeling depressed. This was due, in part, to the medication and the fact that her husband was out of the house and in jail. She reported that she was receiving support from her family and friends. *Id*. **at 401.** In November 2002, Dr. Keely reported Plaintiff was not depressed and she received a refill on her medications. *Id*. **at 400.** In December 2002, Plaintiff was in an expansive mood with "pressured speech and much energy" and reported she "is dating again." *Id*. **at 399.**

The foregoing evidence relates to the Plaintiff's medical history through December 31, 2002, the last date on which she was insured according to her earnings record through that date.  Considered in its entirety, this evidence supports the ALJ's conclusion that Plaintiff's health problems, mental or physical, or in combination, were not of such severity as to be disabling before the expiration of her insured status.

The following evidence summary relates to the period following December 2002, continuing through September 7, 2004, the date on which the ALJ concluded Plaintiff's disability began.

On January 9, 2003, Plaintiff was again seen by Ms. Holloway-Neal. Plaintiff reported that she was concerned for the safety of her husband while he was in jail, but did not report depression aside from her concern over her husband.  She filled out applications for continued medications and was given  refills.  *Id*. **at 398.**  On March 17, 2003, Ms. Holloway-Neal reported that Plaintiff was feeling well and her mood appeared much better than on their last visit.  *Id*. **at 210.**  Plaintiff presented for a psychological examination on May 30, 2003, with Dr. Wayne Kim.  In his report, Dr. Kim noted that Plaintiff was well groomed, pleasant, cooperative, and provided detailed answers to his questions.  Dr. Kim opined that Plaintiff appeared

to be of average intelligence, and was capable of handling her own monetary affairs. Plaintiff informed Dr. Kim that "for about a year now" she had worked as an online psychic, was good at her job, and was a "third generation psychic." *Id.* **at 148-50.** In August 2003, she took a two-week trip to Canada to see her granddaughter. Plaintiff reported encountering no significant problems in her travels. *Id.* **at 390.** On October 27, 2003, Dr. Keely examined Plaintiff and noted that she presented well, was calm, exhibited a level mood, good eye contact and did not show signs of depression. Dr. Keely continued Plaintiff on her psychotropic medications. *Id.* **at 201, 389.**

On January 22, 2004, Dr. Keely met with Plaintiff and he noted that she looked well, appeared calm, but Plaintiff admitted that she had been crying lately. Dr. Keely suggested that Plaintiff increase her daily dosage of Klonopin. *Id.* **at 199.** In February 2004, Plaintiff met with Ms. Burts and related that she was having feelings of hopelessness that day. Plaintiff believed that her down feeling stemmed from the revelation six years earlier regarding her husband and their children. Plaintiff met with Ms. Burts a couple of weeks later and reported an improved mood. *Id.* **at 341, 338.** In the same month, Dr, Keeley submitted a report detailing his

treatment of Plaintiff for depression, insomnia, and anxiety. He noted that Plaintiff appears to "manage well" but he could not fully assess "her work capability," although he reported that she would likely make a good employee. He also was of the opinion that as a person with a college degree "she may be capable of accomplishing and meeting goals." *Id*. at **435.** In March 2004, after breaking up with her boyfriend, and becoming concerned over her mother's illness, she overdosed on Klonopin and was taken to the emergency room. *Id*. **at 278, 336.** In April 2004, Ms. Burts reported that Plaintiff's mood had improved and she planned to visit her mother in Florida. Plaintiff demonstrated a sense of humor and seemed to enjoy sharing pictures with Ms. Burts. *Id*. **at 334.** In May 2004, Plaintiff reported that the visit with her mother went well, and that she was trying to cope with the possibility that her mother may have cancer. Plaintiff expressed that she sometimes felt overwhelmed by the responsibilities of daily life. *Id*. **at 332-33.** In June and July 2004, Plaintiff again expressed a sense of feeling overwhelmed with her current life. Plaintiff reflected positively on her time working for Frito Lay®, where she felt she had control and power. *Id*. **at 330-31.** In late July 2004, Ms. Burts reported Plaintiff appeared less depressed and demonstrated a sense of humor

during their meeting.  *Id*. **at 329.**  On August 4, 2004, Plaintiff met with Ms.

Burts and expressed frustration over her medication levels.  Plaintiff

reported that she was readying her home for company, and expressed

worry about her husband perhaps getting out of prison.  Plaintiff again

expressed regret to Ms. Burts that her children had ever been harmed by

her husband.  *Id*. **at 328.**  On August 25, Plaintiff reported that she had

been feeling more depressed in the preceding weeks and that she could

not identify a reason for this.  *Id*. **at 326.**  On September 1, Plaintiff again

reported increased depression and hopelessness.  *Id*. **at 325.**

On September 11, 2004, Plaintiff was given a comprehensive

psychological evaluation by clinical psychologist Patricia A. Avignone,

Ph.D.  *Id*. **at 254-59.**  Dr. Avignone concluded that Plaintiff met the criteria

for panic disorder with agoraphobia (acute, extreme anxiety with

disorganization of personality and function, intense irrational fear of being

in public places where escape would be difficult), bipolar disorder (mood

disorder in which both manic and depressive episodes occur), and

obsessive-compulsive disorder (personality disorder pertaining to

obsession, *i.e.*, recurrent, persistent thought, image or impulse that is

unwanted and distressing); that she was impaired by her mental illness and

medications; that she would have difficulty understanding, remembering, and following instructions in a work environment; that she is distracted and confused by her mental illness and medication, and is unable to tolerate being in a workplace with other people and "it is thought that this would continue to be the case." ***Id*. at 258.**

While the voluminous evidence before the ALJ may have supported an earlier or later onset date, nevertheless it was his responsibility to weigh and evaluate all the evidence. As a result, he determined the onset date of disability to be September 11, 2004. In doing so, he found the Plaintiff's prior testimony lacked certain credibility. ***Id*. at 22.** "Great weight should be given to the hearing examiner's findings where credibility of witnesses is involved." ***Laws v. Celebrezze*, 368 F.2d 640, 644 (4th Cir. 1966).** The ALJ's analysis of the facts and controlling law was thoroughly detailed. ***Id*. at 21-29.** It must, therefore, be upheld. ***Jolley v. Weinberger*, 537 F.2d 1179, 1181 (4th Cir. 1976).**

At Plaintiff's hearing on December 20, 2006, in response to an appropriate hypothetical question, the vocational expert testified that a person of Plaintiff's age, past work experience, education and health related background would have been able to perform work as an office

helper, a mail clerk, or a stock checker prior to the disability onset date of September 7, 2004. He noted that these jobs existed in substantial numbers in North Carolina and in the national economy. *Id.* **at 583-87.** Given Plaintiff's limitations existing after this date, he was of the opinion that no jobs would be available to her. *Id*.


# IV. DISCUSSION

Disability under the Social Security Act means the inability to engage in any substantial gainful activity[2] due to a physical or mental impairment expected to result in death or to last for a continuous period of not less than twelve months. In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. *See* **20 C.F.R. § 416.920.** If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. *Pass v. Chater*, **65 F.3d 1200, 1203 (4ᵗʰ Cir. 1995).** The claimant "bears the burden of production and proof during the first four

---

[2] Substantial gainful activity is defined as work that is both substantial and gainful. **20 C.F.R. § 404.1572.** Substantial work activity involves engaging in significant physical or mental activities. Work can be substantial even if done on a part-time basis. *Id.* **§ 404.1572(a)**. Gainful work activity is work activity that is done for pay or profit. *Id.* **§ 404.1572(b)**. If a claimant is found capable of engaging in substantial gainful activity then they will be found "not disabled." *Id.* **§ 404.1571**.

steps of the inquiry." ***Id*. (citing *Hunter*, 993 F.2d at 35).** If the claimant

carries his or her burden through the fourth step then "the burden shifts to

the Secretary in the fifth step to show that other work is available in the

national economy which the claimant could perform." ***Hunter*, 993 F.2d at

35.**

First, if the claimant is engaged in substantial gainful activity, the

application is denied regardless of the medical condition, age, education,

or work experience of the applicant. ***Pass, supra*.** Second, the applicant

must show a severe impairment. If the applicant does not show any

impairment or combination thereof which significantly limits the physical or

mental ability to perform work activities, then no severe impairment is

shown and the applicant is not disabled. ***Id*.** Third, if the impairment meets

or equals one of the listed impairments of Appendix 1, Subpart P,

Regulation 4, the applicant is disabled regardless of age, education or

work experience. ***Id*.** Fourth, if the impairment does not meet the criteria

above but is still a severe impairment, then the ALJ reviews the claimant's

residual functional capacity and the physical and mental demands of work

done in the past. If the claimant can still perform that work, then a finding

of not disabled is mandated. ***Id*.** Fifth, if the claimant has a severe

impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. *Id.*

In this case, the ALJ concluded at step five that Plaintiff had the residual function capacity to perform light and sedentary work which was unskilled or semi-skilled and had engaged in some substantial gainful activity from November 2, 1998, until on or before September 7, 2004. As of this latter date, the ALJ further concluded Plaintiff could not perform any gainful activity by reason of severe mental limitations . As previously noted, in analyzing Plaintiff's claim at step five, the ALJ found that Plaintiff was not disabled after considering her age, work experience, education, and residual functional capacity, and he concluded there were significant numbers of such jobs in the state and national economy.

In order to qualify for disability insurance benefits, Plaintiff has the burden of proof during the first four steps of the sequential evaluation. *Pass,* **65 F.3d at 1203.** Additionally, Plaintiff "must prove that she became disabled prior to the expiration of her insured status." *Johnson v. Barnhart*, **434 F.3d 650, 655-56 (4th Cir. 2005);** *see* **20 U.S.C.A. §**

**423(a)(1)(A)**.  A claimant is entitled to a period of disability if they have or have had a disability as defined by § 404.1505, are insured for disability, as defined by § 404.130, in the calendar quarter in which they became disabled**,** and file an application *while disabled*, or *no later than 12 months after the month in which their period of disability ended*.  **20 C.F.R § 404.320(b)(1)(2), (3) (emphasis added).**  Plaintiff failed to meet these requirements for reasons previously discussed.  The Court's review of the ALJ's determination is limited to whether the decision is supported by substantial evidence and whether the correct law was applied.  ***Craig*, 76 F.3d at 589.**  The administrative record clearly supports the ALJ's conclusion that Plaintiff was engaged in substantial gainful activity in 2004. However, even if the ALJ had not so concluded, his decision that Plaintiff was not disabled by reason of mental limitations before September 7, 2004, is supported by substantial evidence. The Court finds the ALJ's determination that Plaintiff is not entitled to disability benefits is supported by substantial evidence and based upon application of the correct legal standard.  ***Id.***

## V.  ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's motion for summary judgment is **DENIED,** and the Defendant's motion for summary judgment is hereby **ALLOWED**.  A Judgment affirming the Commissioner's decision denying benefits to the Plaintiff is filed herewith.

Signed: August 26, 2009

Lacy H. Thornburg
United States District Judge